UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LUCIEN BERREY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV 96-PT-2119-E |
| | ) |
| CITY OF ANNISTON, | ) |
| | ) |
| Defendant. | ) |

FILED
97 MAR 28 PM 3:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 31 1997

## MEMORANDUM OPINION

This cause comes on to be heard on the Motion For Summary Judgment filed by defendant on December 17, 1997.

On November 5, 1992, the plaintiff signed and submitted the following statement:

> Ref: Resignation
>
> I regretfully give notice of my resignation for personal reasons to become effective Nov. 9th, 1992. I have enjoyed my tenure with the Anniston Police Department, and I am grateful for the experience I have gained.

Pursuant to said submitted resignation statement, City of Anniston (Anniston) Chief of Police, C. W. Chandler (Chandler) endorsed the resignation letter as follows:

November 5, 1992

1

>This is to request that the Civil Service Board accept this resignation in good standing.

Prior to the submission of the resignation letter, Chandler had received a report that plaintiff had violated a police department fraternization policy by having a relationship with Susan Watson, a police department clerk. When confronted by an internal affairs investigator with the allegation, both plaintiff and Watson initially denied the allegations, testified to by others, of various amorous contacts in public places, including local bars. Plaintiff later admitted to Chandler that he had lied.

Prior to this investigation, plaintiff, a married police officer, had at least three accidents while driving patrol cars, for which he was reprimanded and counseled. Watson, an unmarried clerk, had, perhaps, received one reprimand for not attending a seminar.

After Watson acknowledged the relationship to her immediate supervisor, she also typed a resignation letter, but withdrew it on the request of her supervisor who felt that she was a good worker. Plaintiff did not receive similar supervisory support.

The plaintiff charges Anniston with sex discrimination. In effect he alleges that Anniston intentionally discriminated

2

against him because of his sex, male. He further alleges that his letter of resignation was, in effect, a "constructive discharge."

The court concludes that plaintiff has not submitted evidence to establish a reasonable inference of intentional sex discrimination. The court further concludes that his resignation cannot be reasonably considered to be a constructive discharge.

The court's conclusion with reference to the sex discrimination claim is based on the fact that the parties were not similarly situated.

1. Plaintiff was a police officer. Watson was a clerk. On deposition, Chandler, in testifying as to plaintiff lying to him and to the investigating officer, said, "Well, it's certainly not the kind of ethics and moral integrity that a person _in that type of position_ ought to exhibit" (emphasis added). Chandler also testified that he was concerned about the public perception of a married police officer with a pregnant wife engaging in a public amorous relationship with an unmarried female employee. Hopefully, society has not degenerated to the point where that cannot even be an issue.

2. Plaintiff had a record of three reprimands related to his work duties. Watson had one reprimand for not attending a

3

seminar.

3. Watson's supervisor interceded on her behalf.[1]

There may be other lack of similarity.

The court further concludes that there was no constructive discharge. Chandler clearly had the right to initiate plaintiff's termination. Plaintiff clearly had the authority, under Alabama law, to oppose any such effort before the Civil Service Board and, if unsuccessful there, in the Alabama courts. He was not "forced" to resign. He was not constructively discharged. He merely accepted an alternative to a possible discharge in bad standing by agreeing to a good standing recommendation by Chandler. In his deposition, plaintiff testified as follows:

> Q. What made you decide to resign?
>
> A. Because I thought I would get a good recommendation and this would be dropped like he said it would.
>
> Q. Well, if you say it wasn't dropped, what happened after -- you say it wasn't dropped. What do you mean by that?

---

[1] See <u>Combs v. Plantation Patterns</u>, ___ F.3d ___ (11th Cir. Feb. 20, 1997), Key 33. Here there is no conflict such as there was in <u>Combs.</u> Plaintiff's supervisor wrote a letter on his behalf <u>after</u> he resigned. There is no evidence that he interceded before plaintiff resigned, as did Watson's supervisor.

4

> A. Well, he said if I resigned and left, I would leave in good standing. . . .

The plaintiff also testified,

> Q. You never made a commment to anyone about trying to save Susan's job?
>
> A. Why would I want to save her job?
>
> Q. No, you just answer my - - did you want her to stay on with The Anniston Police Department, even though you had already decided to resign?
>
> A. On the 5th, when I had the conversation with him and I ultimately turned in my resignation the same day, she called in over the phone and quit the day before. There was nothing to save.
>
> Q. So,, it was your understanding on the 5th that Susan had already quit from Anniston Police Department?
>
> A. Yes, sir.
>
> Q. Had already resigned?
>
> A. Over the phone.

The court is aware of the sometimes recognition that "[i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).[2] Nonetheless, "the

---

[2] See, however, Early v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990) and numerous other Eleventh Circuit cases which have either affirmed summary judgments or reversed trial judges

5

establishment of a prima facie case does not in itself entitle an employment discrimination plaintiff to survive a motion for summary judgment in all cases." Id., 821 F.2d at 595.

Grigsby goes on to say that

> We also recognize, however, that the inference of intentional discrimination raised by a plaintiff's prima facie case may be stronger or weaker, depending upon the facts of a particular case. . . . "To a large extent, of course, the strength or weakness of the inference of discrimination created by the employee's prima facie case defines the nature of the employer's rebuttal" . . . . In some cases the defendant's evidence of legitimate, non-discriminatory reason for its actions may be so strong as to rebut completely the inference raised by plaintiff's prima facie case. Such is the case here. Of course, even in the face of such strong justification evidence, a plaintiff might still create an issue of fact and avoid summary judgment by introducing additional evidence of pretext. But a plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant. Without more, the evidence constituting Grigsby's prima facie case is not sufficient to create an issue of fact in light of the compelling evidence of lawful motive presented by Reynolds.

Id. at 595-97.

> [O]nce the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by defendant were merely a pretext for

---

for not granting judgments as a matter of law in such cases.

discrimination.

Id. at 594.

Based on the foregoing, the court judges its task to determine the following:

    (1)  Has plaintiff offered evidence of a prima facie case?

    (2)  If he has, how strong is it?

    (3)  Has defendant offered rebuttal evidence?

    (4)  If so, how strong is it?  Is it strong enough to overcome a weaker prima facie case?

    (5)  If defendant's rebuttal is strong enough to overcome a weaker prima facie case, has plaintiff offered sufficient evidence of pretext to create an issue of fact?

This court concludes that any possible inference of discrimination raised by plaintiff has been strongly rebutted by defendant's reasons for terminating plaintiff. If plaintiff has proved a prima facie case, it is, at best, weak.

Plaintiff urges that these reasons were mere pretext.  He contends that his sex was impermissibly considered in the decisions.  In Grigsby, supra, the court said, inter alia,

> Grigsby also asserts that the district court erred in completely accepting Reynolds justification that it did not select her for the District Traffic Manager position because it found someone else who was objectively more qualified.  Her entire evidence on

>this point consisted of her affidavit and several
>accompanying exhibits.  Grigsby showed that her salary
>performance appraisal for the period preceding her
>application exceeded that of Regan Ragland, the
>candidate who was eventually chosen for the position.
>Grigsby also asserted that the supposedly objective
>standards for the position were created after Ragland
>was selected for the job.  Further, Grigsby stated in
>her affidavit that she was told by Jim Ogborne,
>Reynolds' Customer Service Manager, that "the
>characters the Traffic Manager would have to deal with
>were pretty rough and he did not want me to have to
>deal with this type of thing."  Grigsby Aff. at 2.
>However, in light of Reynolds' extensive evidence of
>the relative qualifications of the applicants,
>Grigsby's testimony and exhibits simply fail to raise
>any inference of pretext or discriminatory intent.
>
>It is undisputed that Ragland had far greater
>experience with Reynolds' cost accounting system,
>capitalization projects, auditing procedures, and
>computer systems than did Grigsby.  Ragland also had
>eight years experience in various departments of the
>Alloys plant, including four years experience
>supervising professional engineers, as opposed to
>Grigsby whose experience was largely limited to the
>smaller WRB plant.  Moreover, the fact that Grigsby
>received superior performance ratings in her WRB
>position does not refute the fact that Ragland was
>better qualified for the more sophisticated job
>Reynolds sought to fill in the Alloys plant.

<u>Id.</u> at 596.

>This is not a situation where, as Grigsby contends, the
>district court impermissibly weighed the parties'
>evidence instead of merely looking for the existence of
>a genuine issue of fact.  Where the defendant's
>justification evidence completely overcomes any
>inference to be drawn from the evidence submitted by
>the plaintiff, the district court may properly
>acknowledge that fact and award summary judgment to the
>employer.  Grigsby's conclusory allegations of

> discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where Reynolds has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions. See Meiri v. Dacon, 759 F.2d at 998 (conclusory allegations of discrimination insufficient to raise inference of pretext and thereby defeat summary judgment motion). Under these circumstances, Reynolds was entitled to summary judgment.

Id. at 597. Plaintiff has not created a reasonable inference that the defendant acted in bad faith in making its assessments. In Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988), where the court affirmed the grant of a summary judgment, the court stated:

> Before proceeding to our discussion of pretext, we confront initially Young's claim that he produced direct evidence of discrimination. According to Young, Biltgen's oral and written comments that Young lacked the "wherewithal" to perform his job, "moved in slow motion," and was "not proactive," "not aggressive," and approximately the same age as Biltgen's father all constitute direct evidence of discrimination. We do not agree.
>
> It is clear that not every comment concerning a person's age presents direct evidence of discrimination. See, e.g., Barnes, 814 F.2d at 610-11 (statement that plaintiff would have to take another physical examination "and at your age, I don't believe you could pass it," while inappropriate and condescending," was not direct evidence of discrimination); see also Mauter, 825 F.2d at 1558; Chappell v. GTE Products Corp., 803 F.2d 261, 268 n. 2 (6th Cir. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Here, the majority of Biltgen's comments do not even directly concern

Young's age. Rather, the remarks in the evaluations that Young lacked the wherewithal to adequately perform his job, moved in slow motion, and was neither aggressive nor "proactive," at most referred only to characteristics sometimes associated with increasing age. As this court has stated, "'Congress made plain that the age statute was not mean to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence.'" Barnes, 814 F.2d at 611 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir. 1979)) (emphasis added).

Equally as important, the remarks are not directly probative of an intent to discriminate. This is not a case where Biltgen told Young that he would be fired because he was too old. See Castle v. Sangamo Weston, Inc., 887 F.2d 1550, 1558 n. 13 (11th Cir. 1988) (discussing "direct" evidence of discrimination). Instead, it is a case where the plaintiff has inferred that certain facially neutral comments referred to his age in a discriminatory fashion. However, in evaluating any salesman's performance, statements regarding the individual's aggressiveness, enthusiasm, and vigor are hardly surprising.

In Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988), the court stated:

> However, we also hold the district court was justified in entering summary judgment on the grounds that plaintiffs failed to present any credible evidence on the issue of pretext. To avoid summary judgment, a party must produce "specific facts showing that there remains a genuine issue for trial" and evidence "'significantly probative' as to any [material] fact claimed to be disputed." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983) (quoting Ruffing v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)). Thus, plaintiffs' mere conjecture that their employer's explanation is a pretext for

10

intentional discrimination is an insufficient basis for denial of summary judgment.

Mrs. Branson presented no evidence showing that the decision to eliminate her job was motivated by age discrimination and admits she would have required at least minimal training to assume any of the positions retained by younger employees. Her assertion that Price River should nonetheless have retained her is insufficient to create a genuine issue of fact regarding Price River's articulated reasons for her discharge and avoid summary judgment. The ADEA does not require employers to accord members of the protected class preferential treatment, but only that they treat age neutrally. See Williams, 656 F.2d at 129-30.

Mrs. Saccomanno also failed to create a genuine issue of fact regarding Price River's articulated reasons for her discharge. She admits Mr. Anderson "felt" she was less qualified than Mr. Hanson for the accounting department's remaining position and claims only that she was in fact equally or more qualified that Mr. Hanson. As courts are not free to second-guess an employer's business judgment, this assertion is insufficient to support a finding of pretext. See Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed2d 383 (1981). It is the perception of the decision maker which is relevant, not plaintiff's perception of herself. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Consequently, the district court's order of summary judgment was appropriate.

In Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987), the court stated:

. . . Rather, the plaintiff seeks to present direct evidence of discriminatory intent. In his affidavit, Mauter recounts a statement made to him by Carl Morton, a THC vice president who retired in 1983. According to

11

> Mauter, Morton indicated that the plaintiff had grounds for a lawsuit because "The Hardy Corporation was going to weed out the old ones." Morton also filed an affidavit indicating that he has no memory of making such an assertion to Mauter, and that he has no knowledge of facts suggesting that age had any bearing on the decision of THC's management to terminate Mauter.
>
> For purposes of considering the propriety of summary judgment, we assume that Morton made the statement to Mauter. It is undisputed, however, that Morton played no part in the decision to terminate the plaintiff. Furthermore, Morton's uncontradicted affidavit establishes that he has no factual basis for his assertion that age was a factor in Mauter's discharge. Therefore, we hold that this statement is too attenuated to present a genuine issue of material fact as to THC's discriminatory intent. See La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1412-13 (7th Cir. 1984).

In Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988), the court stated:

> Although summary judgment should be granted with caution in employment discrimination cases, there are occasions when such disposition is appropriate. See, e.g., Beard v. Annis, 730 F.2d 741 (11th Cir. 1984). This is one of those cases. Where, as here, full discovery has been conducted, the Supreme Court stated recently that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202, 212 (1986)(citations omitted). See also Celetex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We agree with the district court that the evidence in this case was such as to warrant summary judgment.

In <u>Pace v. Southern Ry. System</u>, 701 F.2d 1383, 1391 (11th Cir. 1983), the court stated:

> Where the ADEA plaintiff has shown "no evidence 'which might infer that age was even a factor in the decision'" of which plaintiff complains summary judgment is warranted. <u>Simmons v. McGuffey Nursing Home, Inc.</u>, 619 F.2d at 370. A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, nondiscriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented. As the Supreme Court noted in <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7, once established a prima facie case creates a rebuttable presumption of discrimination; but this presumption alone does not create an inference that a material fact, sufficient to present a jury question, is an issue. <u>See also</u> <u>Reeves v. General Food Corp.</u>, 682 F.2d 515, 521-22 & n. 9 (5th Cir. 1982). <u>Cf.</u> <u>Moore v. Sears, Roebuck & Co.</u>, 464 F. Supp. at 366 ("Only in an extraordinary instance could rebuttal evidence be so conclusive as to permit summary adjudication). In <u>Simmons</u>, <u>supra</u>, defendants rebutted plaintiff's prima facie case by showing a legitimate, nondiscriminatory reason for the discharge and plaintiff failed to prove that age, rather than the nondiscriminatory reason, was the motivation for the decision. 619 F.2d at 371. This court held that summary judgment was appropriate because "[t]he possibility of a jury drawing a contrary inference sufficient to create a dispute as to a material fact does not reify to the point even of a thin vapor capable of being seen or realized by a reasonable jury." <u>Id.</u>

There is no evidence that any decision was made in bad faith. See Clark v. Huntsville Bd. of Educ., supra at 527. See also Nix v. WLYC Radio Rahall Communications, 738 F.2d 1181, 1185 and 1187 (11th Cir. 1984), where the court said:

> The court thus may not circumvent the intent requirement of Plaintiff's ultimate burden of persuasion by couching its conclusion in terms of pretext; a simple finding that the Defendant did not truly rely on its proffered reason, without a further finding, that the Defendant relied instead on race will not suffice to establish Title VII liability.
>
> * * *
>
> Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason . . . "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve.

At best, plaintiff's evidence is "merely colorable." See Young, supra, 840 F.2d at 828. Plaintiff has introduced no substantial evidence "that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence." Mantor v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987).

See also Early, supra,

> Upon review of a grant of summary judgment, we apply the same legal standard that bound the district court. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The trial court "must consider all the evidence in the light most favorable to the non-moving party," Rollins, 833 F.2d at 1528, and "resolve all reasonable doubts in favor of the non-moving party." Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987). A trial court, however, is not required "to resolve all doubts in such a manner." Barnes, 814 F.2d at 609.
>
> "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P.1). "[The summary judgment] standard mirrors the standard for a directed verdict under the Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.
>
> Consideration of a summary judgment motion does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proved. Rollins, 833 F.2d at 1528. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the [movant's]

substantive evidentiary burden." <u>Anderson</u>, 477 U.S. at 254, 106 S.Ct. at 2513. The trial judge must bear in mind the "actual quantum and quality of proof necessary to support liability" in a given case. <u>Id.</u> "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, we must affirm the grant of summary judgment [for the defendant]." <u>Barnes</u>, 814 F.2d at 609.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552.

Where as here discovery has been conducted, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is <u>merely colorable</u>, or is <u>not significantly probative</u>, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted) (emphasis added); <u>accord Hudson v. Southern Ductile Casting Corp.</u>, 849 F.2d 1372, 1376 (11th Cir. 1988). Summary judgments for defendants are not rare in employment discrimination cases. <u>See, e.g., Mauter v. Hardy Corp.</u>, 825 F.2d 1554 (11th Cir. 1987); <u>Grigsby v. Reynolds Metal Co.</u>, 821 F.2d 590 (11th Cir. 1987); <u>Palmer v. District Bd. of Trustees of St. Petersburg Junior College</u>, 748 F.2d 595 (11th Cir. 1984); <u>Pace v. Southern Ry. Sys.</u>, 701 F.2d 1383 (11th Cir. 1983); <u>Simmons v. McGuffey Nursing Home, Inc.</u>, 619 F.2d 369, 371 (5th Cir. 1980).

16

(Emphasis in original). 907 F.2d 1080-81.

In Early, supra, the court also stated:

> The defendant may be entitled to summary judgment if he produces evidence of legitimate nondiscriminatory reasons for the employment action. To survive summary judgment, the plaintiff must then present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice. Mauter, 825 F.2d at 1558; Grigsby, 821 F.2d at 596-97; Palmer, 748 F.2d at 599; Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983); Pace, 701 F.2d at 1391; Simmons, 619 F.2d at 371. Most important, the plaintiff always bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

907 F.2d at 1081.

This is purely and simply a case in which an employer made an employment decision. There is no evidence that the employer acted in bad faith. Plaintiff's subjective conclusions are not sufficient.

This 28 day of March, 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE